UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| Debra J. Duffy, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Delta Air Lines, Inc, The Administrative Committee of Delta Air Lines, Inc., and John and Jane Does 1-10,<br><br>Defendants. | FILE NUMBER: ____________<br><br>**COMPLAINT—CLASS ACTION** |

Plaintiff Debra J. Duffy, by and through her attorneys, on behalf of herself and all others similarly situated, based on personal knowledge with respect to her own circumstances and based upon information and belief pursuant to the investigation of her attorneys as to all other circumstances, alleges as follows:

## INTRODUCTION

1. This is a class action against Delta Air Lines, Inc. ("Delta"), The Administrative Committee of Delta Air Lines, Inc. (the "Committee"), and John and Jane Does 1-10 for vested retirement benefits under the Northwest Airlines Plan for Contract Employees (the "Plan") that have been unlawfully denied due to (a) the failure of the Defendants to comply with the terms of the Plan and (b) multiple and

ongoing violations by Defendants of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* (“ERISA”).

2. Plaintiff Debra J. Duffy (“Ms. Duffy”) filed a claim for benefits under the Plan after she was age 65, which is the Normal Retirement Date under the Plan.

3. Defendants Delta and the Committee refused to pay Ms. Duffy the monthly pension she was entitled to for the period between her Normal Retirement Date and the date she filed a benefit application. Delta and the Committee refused to make up the missed payments, either by way of retroactive payments back to her Normal Retirement Date or by increasing the amount of her future pension to compensate for the missed benefit payments.

4. Refusing to pay retroactive benefits or, in the alternative, increase Ms. Duffy’s future benefit payments, resulted in a forfeiture of her Vested retirement benefit in violation of the terms of the Plan and a violation of multiple provisions of ERISA including, but not limited to, a violation of the provisions of ERISA governing the commencement of pension benefits, the unlawful forfeiture of her accrued benefits in violation of ERISA’s vesting and benefit accrual provisions, and a breach of fiduciary duty.

## PARTIES

5. Plaintiff Ms. Duffy is a resident of the State of Minnesota and at all times relevant to this action a participant in the Plan.

6. Defendant Delta is a corporation with its principal place of business in Atlanta, Georgia. Defendant Delta is the plan sponsor as defined in § 3(16)*(B)* of ERISA, 29 U.S.C. § 1002(16)*(B)*, and a fiduciary of the Plan, as defined in § 3(21) of ERISA, 29 U.S.C. § 1002(21).

7. Defendant Committee is an entity whose members are appointed by the Executive Vice President—Human Resources of Delta. Its principal place of business is Atlanta, Georgia. The Committee is the administrator of the Plan, as defined in ERISA § 3(16)*(A)*, 29 U.S.C. § 1002(16)*(A)* and is a named fiduciary of the Plan, as defined in ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2).

8. Defendants John and Jane Does 1-10 (collectively, "Members") are members of and comprise the Committee. The Members are individually and collectively named fiduciaries of the Plan, as defined in ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2). Because the individuals who served as Members of the Committee are not currently known to Plaintiff, they are collectively named as John and Jane Does 1–10.

## JURISDICTION

9. Jurisdiction is proper under 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

10. Venue is proper under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## FACTS RELATING TO PLAN DOCUMENT PROVISIONS

11. The Plan is an employee pension benefit plan, as defined in ERISA § 3(2), 29 U.S.C. § 1002(2) and a defined benefit plan, as defined in ERISA § 3(35), 29 U.S.C. § 1002(35).

12. Provisions of the Plan document pertinent to this Action, among others, read in relevant part as follows:

> **1.2.2 Accrued Benefit** — the monthly amount of retirement benefit determined for a Participant as of a specified date (and payable to a Participant in the Single Life Benefit form with an Annuity Starting Date on the last day of the calendar month following the calendar month in which the Participant's Normal Retirement Date occurs) . . .
>
> **1.2.18 Normal Retirement Date** — the date the Participant would attain age sixty-five (65) years . . .
>
> **3.4. Vested Benefit.**
>
> **3.4.1. When Available.** A Participant shall be fully Vested in his or her Accrued Benefit . . . (a) upon completing five (5) Years of Vesting Service . . .
>
> * * *
>
> The Participant shall receive this Vested Benefit beginning after the Termination of Employment and the Plan Administrator's receipt of a proper application . . .
>
> **6.10. Forfeiture of Unclaimed Benefits.** A Participant's entitlement to a retirement benefit under the Plan shall be forfeited if it has not been claimed before the end of the period of six (6) years after the later of the Participant's Normal Retirement Date or Termination of Employment. Each other person's entitlement to a retirement benefit or a survivor's benefit under the Plan shall be forfeited if it has not been claimed before the end of the period of six (6) years after the Participant's Normal Retirement Date. If, however, one (1) payment of a retirement benefit or

survivor's benefit had been made to a Participant or other person, such person's right to such retirement benefit or survivor's benefit shall not thereby be forfeited. If a Participant or other person whose retirement benefit or survivor's benefit has been forfeited shall make a claim for such retirement benefit or survivor's benefit under this Plan before this Plan is terminated, the entitlement to the retirement benefit or survivor's benefit shall be reinstated.

**FACTS RELATING TO MS. DUFFY'S ADMINISTRATIVE CLAIM**

13. Ms. Duffy was born in 1953. She was employed by Northwest Airlines, Inc. ("Northwest") on November 6, 1995. She was a member of the International Association of Machinists and Aerospace Workers (IAM) and a Participant in the Plan. She terminated employment with Northwest on August 7, 2005, with 7.1491 years of benefit accrual service and 8 years of vesting service under the Plan. The Plan provided (and currently provides) for full vesting after 5 years of vesting service and, therefore, Ms. Duffy was fully vested in her normal retirement benefit when she terminated employment with Northwest.

14. By letter dated January 26, 2021, when she was 67 and 5 months old, Delta notified Ms. Duffy that she *may* have a pension or other benefits from Delta. The letter also asked her to confirm her current address, which she did on February 5, 2021. She heard nothing further and believed Delta had looked into the matter after her response and determined that she in fact did not qualify for a pension.

15. More than 3 years later, Delta sent a second letter to Ms. Duffy dated March 1, 2024, stating that Delta had been unable to reach her regarding a pension

benefit, even though Ms. Duffy had not changed her address since confirming it with Delta some 3 years before. She confirmed her address again, and after repeated efforts contacting Delta and not receiving a response, she finally received a benefit application on April 29, 2024.

16. She completed and filed the benefit application on or about April 30, 2024. Her pension commenced June 30, 2024, as a single life annuity in the amount of $345.89 per month. Delta refused to make payments retroactive to her Normal Retirement Date.

17. Ms. Duffy sought assistance from Trellis Pension and Retirement Rights ("Trellis"). On September 6, 2024, Trellis filed a claim for benefits on her behalf under the Department of Labor and the Plan's claim procedures, requesting benefits back to her Normal Retirement Date or, in the alternative, an actuarial increase in her ongoing pension to compensate for the missed payments and the fact she was 71 with a shorter life expectancy than at age 65.

18. By letter dated May 23, 2025, Delta denied the claim. The Delta letter stated that Ms. Duffy could appeal the denied claim to the Committee.

19. On August 20, 2025, Trellis filed a timely appeal with the Committee on Ms. Duffy's behalf pursuant to the Department of Labor and the Plan's claim procedures, arguing that the terms of the Plan and applicable law required either

payments retroactive to her Normal Retirement Date or an actuarial increase in her ongoing benefit.

20. A letter dated January 29, 2026, signed by an individual by the name of Chris Guthrie, and sent to Ms. Duffy's representative at Trellis, stated that the Committee had denied her appeal. The decision relied on the following section of the Plan document: "Section 3.4 of the Plan[1] provides for a Vested Benefit and Section 3.4.1 of the Plan, in relevant part, provides that '[t]he Participant shall receive this Vested Benefit beginning after the Termination of Employment and the Employer's receipt of a proper application'".

21. The January 29, 2026, letter went on to say: "The Committee determined that the Plan provision cited above is a condition precedent to receiving the Vested Benefit, and because Ms. Duffy's completed Application was not received until May of 2024, the Committee determined that Ms. Duffy is not entitled to receive benefits from the Plan with retroactive effect to 2018. In addition, the Plan does not provide, and Ms. Duffy is not entitled to, an actuarial increase of her monthly Plan benefit as you requested. Accordingly, the Committee denied your appeal." No further rationale was given for the decision.

---

[1] All references are to the Northwest Airlines Pension Plan for Contract Employees, (2014 Restatement), as amended.

22. Based on Ms. Duffy's experience, and otherwise on information and belief, Delta and the Committee's unvarying practice is that only monthly retirement benefits due after a "proper application" has been filed with Delta will be paid to a benefit eligible Plan participant who is over the normal retirement age of 65 and that, in such case, the Plan will not pay benefits retroactive to the Plan participant's Normal Retirement Date, plus interest, nor will an actuarial increase be provided to compensate for the missed benefit payments and delayed benefit commencement.

23. Based on Ms. Duffy's experience, and otherwise on information and belief, Delta and the Committee's consistent and unvarying practice is that the Plan will not pay retroactive benefits, nor provide an actuarial increase to compensate for missed benefit payments and deferred benefit commencement, as required by the unclaimed benefit provisions of Section 6.10 of the Plan. That Section provides a benefit will not be forfeited if claimed within 6 years of a Plan participant's Normal Retirement Date. Section 6.10 provides for a forfeiture of benefits if an application for benefits is made more than 6 years after a Plan participant's Normal Retirement Date, but explicitly provides that the forfeiture will be restored once a participant comes forward and claims his or her benefit.

24. The decision by Delta to initially deny her claim, and the Committee's decision to deny the claim on appeal, does not comply with the terms of the Plan, whether based on *de novo* review or an abuse of discretion standard of review. Independent of the Plan terms, the decisions to deny Ms. Duffy's claim violate the requirements of ERISA.

25. Based on Ms. Duffy's experience, and otherwise on information and belief, a successful claim under the Plan's claim procedures for retroactive benefits or an actuarial increase in future benefits is futile given Delta and the Committee's established practice, procedure and conduct.

**ALLEGATIONS BASED ON PLAN DOCUMENT**

26. The Committee denied Ms. Duffy's appeal based on Section 3.4.1 of the Plan. Section 3.4.1 of the Plan provides in relevant part that a Participant will be fully vested in his or her "Accrued Benefit" upon completing 5 years of vesting service. "Accrued Benefit" is defined by the Plan in Section 1.2.2 as a monthly benefit starting "on the last day of the calendar month following the calendar month in which the Participant's Normal Retirement Date occurs.. . ." The Normal Retirement Date is the date the Plan participant attains age 65.

27. Section 3.4.1 goes on to provide that "*this* Vested Benefit"—referring to the vested benefit beginning as an annuity at the Normal Retirement Date—will be paid after "the Plan Administrator's receipt of a proper application . . . ." The express language of the Plan thereby requires the Plan to pay a benefit that consists of the whole of the Vested Accrued Benefit, not merely the monthly pension benefits payable after the benefit application is filed. Delta and the Committee's practice resulted in the unlawful forfeiture of a portion of Ms. Duffy's Vested Accrued Benefit contrary to the terms of the Plan.

28. Section 6.10 of the Plan specifically provides for the contingency that a benefit may not be claimed for a period of time following a Plan participant's Normal Retirement Date. Section 6.10 provides that no forfeiture of a participant's retirement benefit will occur if a benefit is claimed anytime during the 6-year period following a participant's Normal Retirement Date. Section 6.10 of the Plan also provides that if no benefit claim is made during that 6-year period, the participant's retirement benefit will be forfeited, *but* the benefit will be reinstated if a claim for benefits is filed after the 6-year period. Based on Ms. Duffy's experience, and otherwise on information and belief, Delta and the Committee have consistently failed to comply with Section 6.10 of the Plan.

29. Under the terms of the Plan, including Section 3.4.1 and Section 6.10, filing an application for benefits may be a precondition for the *commencement* of benefits, but once that condition has been satisfied, it is not and cannot be a condition for the payment of a participant's Vested Accrued Benefit in full.

## ALLEGATIONS BASED ON VIOLATIONS OF ERISA

30. ERISA prescribes when a plan participant's benefit must commence. Section 206(a) of ERISA, 29 U.S.C. § 1056(a), provides in relevant part as follows:

> (a) Commencement date for payment of benefits. Each pension plan shall provide that unless the participant otherwise elects, the payment of benefits under the plan to the participant shall begin not later than the 60th day after the latest of the close of the plan year in which—

(1) occurs the date on which the participant attains the earlier of age 65 or the normal retirement age specified under the plan . . .

31. Section 401(a)(14) of the Internal Revenue Code (the "Code"), 26 U.S.C. § 401(a)(14), is a verbatim counterpart to Section 206(a) of ERISA. Section 401(a)(14) requires a plan to include the mandatory benefit commencement language as a condition of tax qualification.

32. The Plan does not include the provisions required by Section 206(a) of ERISA and Section 401(a)(14) of the Code, even though both sections plainly say that "[e]ach pension plan shall provide" the mandated language.

33. Reorganization Plan No. 4 of 1978, § 101, 43 Fed.Reg. 47713 (1978), 92 Stat. 3790, gives the Secretary of the Treasury the ultimate authority to regulate most of the substantive requirements of ERISA that have a counterpart provision in the Code, among them Section 206(a) of ERISA. Treas. Reg. § 1.401(a)-14, 26 C.F.R. § 1.401(a)-14 (filed September 23, 1976) provides that a plan does not violate Section 206(a) of ERISA if the plan requires the plan participant to file a benefit application before benefits commence if the amount of the payment cannot be ascertained. The amount of the payment cannot be ascertained before a benefit application is filed because the payment amount may depend on the payment option elected by the participant, among other things. In that case, however, the regulation obligates the plan to make retroactive payments and the failure to do so violates the benefit commencement

requirements of Section 206(a) of ERISA. Treas. Reg. § 1.401(a)-14(d), 26 C.F.R. § 1.401(a)-14(d) provides as follows:

> Retroactive payment rule. If the amount of the payment required to commence on the date determined under this section cannot be ascertained by such date, or if it is not possible to make such payment on such date because the plan administrator has been unable to locate the participant after making reasonable efforts to do so, a payment retroactive to such date may be made no later than 60 days after the earliest date on which the amount of such payment can be ascertained under the plan or the date on which the participant is located (whichever is applicable).

34. Under Section 206(a) of ERISA, filing an application for benefits may be a precondition for the *commencement* of benefits, but once that condition is satisfied, Section 206(a) requires the payment of a participant's Vested Accrued Benefit in full.

35. The vesting and benefit accrual requirements of ERISA (found generally in Title I, Part 2 of ERISA), including Section 203 of ERISA, 29 U.S.C. § 1053, provide that an accrued benefit, once vested, may not be forfeited.

36. Exceptions to the anti-forfeiture requirements of ERISA are narrow and specific. Section 6.10 of the Plan mirrors the IRS regulations in effect going back to when Section 6.10 was first part of the Plan document. When a benefit is unclaimed, the regulations provided that the unclaimed benefit may be forfeited, but only if the forfeiture is restored when the participant presents himself or herself and claims the

forfeited benefit. Treas. Reg. § 1.411-4(b), 26 C.F.R. § 1.411-4(b), (adopted August 22, 1977) provided as follows:

> **(b) Special rules.**
>
> For purposes of paragraph (a) of this section a right is not treated as forfeitable—
>
> *(6) Lost beneficiary; escheat.*
>
> In the case of a benefit which is payable, merely because the benefit is forfeitable on account of the inability to find the participant or beneficiary to whom payment is due, provided that the plan provides for reinstatement of the benefit if a claim is made by the participant or beneficiary for the forfeited benefit. In addition, a benefit which is lost by reason of escheat under applicable state law is not treated as a forfeiture.

## ALLEGATIONS RELATING TO BREACH OF FIDUCIARY DUTY

37. Delta exercised discretion and control over the management and administration of the Plan by, among other things (a) establishing practices and procedures whereby, on information and belief, participants with deferred Vested Benefits under the Plan who submitted an application that Delta accepted as a compliant benefit application after the participant's Normal Retirement Date were routinely and consistently paid only future benefits from the date of the benefit application forward; (b) based on Ms. Duffy's experience, and otherwise on information and belief, participants who raised questions about retroactive payments were told by Delta that retroactive benefits would not be paid; and (c) filing a claim with Delta was the first stage of the claims procedure, and based on Ms. Duffy's

experience, and otherwise on information and belief, Delta consistently rejected all claims for retroactive benefits or an actuarial increase in future benefits.

38. In addition, Delta had the discretion under Section 7.1 of the Plan to appoint the members of the Committee, remove or substitute Members of the Committee and, on information and belief, failed to properly supervise and monitor the decisions of the Committee.

39. As to the Committee, and based on Ms. Duffy's experience and otherwise on information and belief, the Committee exercised discretion and control over the management and administration of the Plan by rejecting appeals of decisions by Delta to deny retroactive benefits or provide an actuarial increase in future benefits in the case of benefit applications accepted by Delta after the participant's Normal Retirement Date, thereby resulting in a violation of the terms of the Plan, a violation of ERISA requirements relating to the commencement of benefits and a forfeiture of a Plan participant's Vested Accrued Benefit.

## **CLASS ACTION ALLEGATIONS**

40. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the class (the "Class") defined as follows:

> All participants and former participants of the Northwest Pension Plan for Contract Employees who terminated employment with Northwest Airlines, Inc. or Delta Air Lines, Inc. before their Normal Retirement Date with a deferred Vested retirement benefit and either (1) submitted

an application for their retirement benefits after the Normal Retirement Date or (2) have reached the Normal Retirement Date and not yet submitted an application for their retirement benefits, including any designated beneficiary of such participant or former participant who is entitled to or receiving a survivor or other benefit. For avoidance of doubt, this Class includes participants who may have filed an application for benefits before their Normal Retirement Date, but where Delta did not treat the application as complete until after the Normal Retirement Date, resulting in missed pension payments.

41. The members of the Class are so numerous that joinder of all members is impractical. Upon information and belief, the Class includes 1,000 members or more.

42. Plaintiff's claims are typical of the claims of the members of the Class because her claims and the claims of all Class members arise out of the same policies and practices as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct. More specifically, Plaintiff's claims turn on the same Plan document terms, are grounded in the same violations of ERISA and arise out of the same fact pattern, namely, the consequences effected by Delta and the Committee of a proper application for benefits after the Plan's Normal Retirement Date by a Plan participant with a deferred Vested benefit.

43. There are questions of law and fact common to the Class and these questions predominate over questions only affecting individual Class members. Common legal and factual questions include, but are not limited to:

(a) Whether the Plan terms permit a forfeiture of a Vested Accrued Benefit due to the failure to pay retroactive benefits when a Plan participant with a deferred Vested retirement benefit files an application for benefits after his or her Normal Retirement Date;

(b) Whether the Plan terms comply with ERISA;

(c) Whether Delta and the Committee have complied with ERISA requirements regarding the commencement of benefits; and

(d) Whether the failure to pay retroactive benefits or provide an actuarial increase results in the forfeiture of a participant's Vested Accrued Benefit.

44. Plaintiff will fairly and adequately represent the Class and has retained counsel experienced and competent in the prosecution of ERISA class actions. Plaintiff has no interests antagonistic to those of other members of the Class. Plaintiff is committed to the robust prosecution of this action and anticipates no difficulty in the management of this litigation as a class action.

45. This action may be properly certified under either subsection of Rule 23(b)(1). Class action status is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual

members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

46. In the alternative, certification under Rule 23(b)(2) is warranted because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate benefit claims, final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

47. In the alternative, certification under Rule 23(b)(3) is warranted because the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## FIRST CLAIM FOR RELIEF
## Claim for Benefits
## (ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B))

48. Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

49. Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), authorizes a participant to bring a civil action to, among other things, "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan."

50. Plaintiff hereby (a) claims the benefits due to her under the terms of the Plan; (b) requests the Court to enforce her rights under the terms of the Plan; and (c) requests the Court to clarify her rights to future benefits under the terms of the plan, specifically in each case, her right to retroactive payment of her Vested Accrued Benefit back to her Normal Retirement Date, plus interest or, in the alternative, an appropriate actuarial increase in her Normal Retirement Benefit to compensate for missed payments of her Vested pension and a decrease in her actuarial life expectancy.

**SECOND CLAIM FOR RELIEF**
**Declaratory and Equitable Relief**
**(ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))**

51. Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

52. The Second Claim for Relief is made as an alternative and additional claim for relief.

53. Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), authorizes a plan participant or beneficiary to bring a claim "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

54. Delta and the Committee have unlawfully caused a forfeiture of Vested Accrued Benefits by maintaining a practice and procedure whereby Plan participants who terminated employment with Northwest or Delta before their Normal Retirement Date, but who filed a proper application for benefits after their Normal Retirement Date, lost a portion of their Vested Benefits. Delta and the Committee refused and, on information and belief continue to refuse, to restore the forfeiture by either making a payment of retroactive plan benefits or, in the alternative, providing an actuarial increase in future benefits.

55. Plan participants who are not current employees of Delta, who are past their Normal Retirement Date and have Vested Accrued Benefits, but who have not yet filed an application for benefits approved by Delta, have already incurred and accrued an injury from their Normal Retirement Date to the current date based on Delta and the Committee's established practices and procedures to forfeit Vested benefits. Such Plan participants have already been victimized by Delta and the Committee's practices and procedures even though they have not filed a benefit application because the practices and procedures in effect will deny retroactive payments or an actuarial increase for the period after their Normal Retirement date up to the current date.

56. Pursuant to 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, Plaintiff seeks

declaratory relief, determining that Delta and the Committee have violated the terms of the Plan, which require the payment of the entirety of a Plan participant's Vested Accrued Benefit and, further, that Delta and the Committee have violated the provisions of Title I of ERISA by causing an unlawful forfeiture of a Plan participant's Vested Accrued Benefit, including Section 203 of ERISA, 29 U.S.C. § 1053, and have failed to comply with the ERISA requirements governing commencement of benefits, as codified in ERISA Section 206(a), 29 U.S.C. § 1056(a).

57. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks injunctive relief to enforce the benefit commencement requirements of ERISA § 206(a) of ERISA, 29 U.S.C. § 1056(a), which requires the payment of benefits under an ERISA-covered Plan no later than 60 days after the close of the Plan year in which the participant attains the normal retirement age under the Plan and the retroactive benefit requirements of Treas. Reg. § 1.401(a)-14, 26 C.F.R. § 1.401(a)-14 and, further, seeks reformation of the Plan document to add the benefit commencement requirements of Section 206(a) based on the mandate in Section 206(a) that "every plan must provide" the benefit commencement requirements enshrined in such Section.

58. Plaintiff's claim for relief under Section 502(a)(3) of ERISA is not duplicative of the relief described in Plaintiff's First Claim for Relief that is grounded in Section 502(a)(1)B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(1)(B)

provides relief under the "terms of the plan." Among other things, the benefit commencement requirements of Section 206(a) are required by Section 206(a), and Section 401(a)(14) of the Code, 26 U.S.C. § 401(a)(14), to be included in the plan document, but are not. The failure to include requirements of Section 206(a) of the ERISA represents at the very least a mistake that violates an explicit statutory requirement, and thus provides a basis for relief entirely independent of relief premised on the terms of the Plan under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) because terms incorporating the mandatory language of Section 206(a) do not exist in the Plan.

59. Plaintiff further seeks orders from the Court providing a full range of equitable relief, including but not limited to:

(a) an injunction requiring the payment of retroactive benefits, with interest or an appropriate actuarial increase in ongoing benefit payments;

(b) an accounting of all Plan participants who filed a proper application for benefits after the Normal Retirement Date or after the date unreduced benefits were otherwise available, if earlier, but who were not paid retroactive benefits or provided with an actuarial increase in benefits to compensate for the missed and delayed benefits, as well as an accounting of the amount of retroactive benefits requested herein and the actuarial increase that would be provided in lieu of retroactive benefits;

(c) a surcharge;

(d) disgorgement of amounts wrongfully withheld;

(e) disgorgement of profits earned on amounts wrongfully withheld;

(f) a constructive trust;

(g) an equitable lien, such funds as being subject to the lien or other equitable remedy being traceable to and held in the Trust for the Plan;

(h) an injunction against further violations; and

(i) other relief the Court deems just and proper.

**THIRD CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(ERISA §§ 1104 and 502(a)(3), 29 U.S.C. §§ 1104 and 1132(a)(3))**

60. Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

61. The Third Claim for Relief is provided as an alternative and additional claim for relief.

62. The Administrative Committee and its Members are named fiduciaries of the Plan as the Plan Administrator and under the provisions of Section 7.1 of the Plan.

63. ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises

any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

64. The Administrative Committee and its Members are fiduciaries of the Plan because they exercised and exercise discretionary authority or discretionary control respecting the management of the Plan as well as authority and control over the disposition of Plan's assets. In addition, they are named as fiduciaries under Section 7.1 of the Plan.

65. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge its duties with respect to a plan in accordance with the documents and instruments governing the plan insofar as they are consistent with ERISA.

The Plan provisions as interpreted by the Committee in Ms. Duffy's appeal, are not consistent with ERISA. Among other things, the Committee's decision violates the vesting and benefit accrual provisions of Title I, Part 2, of ERISA, including Section 203 of ERISA, 29 U.S.C. § 1053. In addition, the Committee's decision failed to comply with the commencement of benefit requirements provided in Section 206(a)

of ERISA, 29 U.S.C. 1056(a), as well as the regulations under Section 206(a) embodied in Treas. Reg. § 1.401(a)-14, 26 C.F.R. § 1.401(a)-14.

66. Delta functions as a fiduciary by exercising discretionary control over the Plan and its assets through its role in establishing practices and procedures for processing benefit applications, responding to inquiries from Plan participants and acting as the first tier in the consideration of and decisions on claims submitted by Plan participants. In that role, benefit- eligible participants who are over the Normal Retirement Date when they first submit a proper benefit application are paid the monthly benefits due after such application, but are denied payment of retroactive benefits to their Normal Retirement Date or an actuarial adjustment for benefits that are missed before that time. In its role as a fiduciary, Plan participants who inquire are told by Delta they are not entitled to retroactive benefits or an actuarial adjustment in future benefits, and claims filed for retroactive benefits with Delta, as the first tier decider of the claims under the Plan and Department of Labor claim procedures, are denied as a matter of course. As evidenced by its discretionary decisions reflected in its practices and procedures, Delta is a Plan fiduciary, and as such, has failed to properly interpret the Plan not only based on its plain meaning, but in a manner that is not consistent with ERISA, resulting in a breach of its fiduciary duties.

67. ERISA imposes on fiduciaries that appoint other fiduciaries the duty to supervise and monitor the actions of those appointed fiduciaries to ensure compliance with ERISA. Section 7.1 of the Plan provides that the members of the Committee are appointed at the discretion of the Executive Vice President—Human Resources of Delta, who also has the discretionary authority to remove and substitute Members of the Committee. By allowing the Committee to misinterpret the Plan, and continue to violate the provisions of ERISA, including causing Plan participants to unlawfully forfeit Vested Accrued Benefits and violate ERISA requirements as they relate to the commencement of benefits under ERISA, Delta breached its fiduciary duties to supervise and monitor the Committee.

68. Delta and the Committee have also breached their fiduciary duty to adequately disclose the consequences they contend result from failing to file an application for benefits before the Normal Retirement Date.

69. Department of Labor Regulations 2520.102-3(l), 29 C.F.R. 2520.102-3(l) require the summary plan description to provide a statement "clearly identifying the circumstances that may result in . . . forfeiture . . . of any benefits the participant or beneficiary might otherwise reasonably expect the plan to provide . . ." If in fact Delta and the Committee's practice was to forfeit benefits when an application for benefits was filed after the Normal Retirement Date, they were obligated to disclose the same in the summary plan description, which they failed to adequately do.

70. Fiduciaries are obligated to deal fairly and honestly with plan participants. Ms. Duffy provided Delta with her address three years before she received another letter from Delta *sent to the address she had given them three years prior*, maintaining that it did not have her address and advising her that she had a pension under the Plan. Ms. Duffy alleges that Delta and the Committee's practice of forfeiting normal retirement benefits due to a delay in filing a benefit application is unlawful, but applying arguendo Delta and the Committee's practice of forfeiture, Duffy forfeited an additional three years of benefits due to Delta and the Committee's lack of diligence and failure to disclose the effect of a delay in the application under their procedures. On information and belief, other Class members have experienced similar conduct from Delta and the Committee.

71. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

72. Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiff seeks declaratory relief, determining that the Committee and Delta, as Plan fiduciaries, have breached their fiduciary duties.

Plaintiff further seeks orders from the Court providing a full range of equitable relief, including but not limited to:

(a) an injunction requiring the payment of retroactive benefits, with interest or an appropriate actuarial increase in ongoing benefit payments;

(b) an accounting of all Plan participants who filed a proper application for benefits after the Normal Retirement Date or after the date unreduced benefits were otherwise available, if earlier, but who were not paid retroactive benefits or provided an actuarial increase in benefits to compensate for the missed benefits, as well as an accounting of the amount of retroactive benefits requested herein and the actuarial increase that would be provided in lieu of retroactive benefits;

(c) surcharge;

(d) disgorgement of amounts wrongfully withheld;

(e) disgorgement of profits earned on amounts wrongfully withheld;

(f) a constructive trust;

(g) an equitable lien, such funds as being subject to the lien or other equitable remedy being traceable to and held in the Trust for the Plan;

(h) an injunction against further violations; and

(i) such other relief the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and requests and that the Court award the following relief:

A. Certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Declaring that the Plan failed and continues to fail to pay Plaintiff and the Class the full amount of the Vested Accrued Benefits to which they are entitled under the terms of the Plan and ERISA;

C. Ordering Defendants to bring the Plan into compliance with ERISA, including, but not limited to, reforming the Plan to bring it into compliance with the benefit commencement requirements of ERISA;

D. Ordering Defendants to operate the Plan in accordance with the Plan as reformed and the requirements of ERISA, including the payment of retroactive benefits, plus interest, when a Participant claims benefits after the Normal Retirement Date or after the date unreduced benefits were otherwise available, if earlier, or providing an appropriate actuarial increase in benefit payments to account for missing benefit payments;

E. Ordering Defendants to provide an accounting of all Plan participants who filed a proper application for benefits after the Normal Retirement Date, or after the date unreduced benefits were otherwise available if earlier, but who were not

paid retroactive benefits or provided an actuarial increase in benefits to compensate for the missed benefits, as well as an accounting of the amount of retroactive benefits requested herein and the actuarial increase that would be provided in lieu of retroactive benefits;

F. Ordering Defendants to pay all benefits improperly withheld, including under the theories of surcharge and disgorgement and under the benefit claim provisions of Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B);

G. Ordering Defendants to disgorge any profits earned on amounts improperly withheld;

H. Imposition of a constructive trust;

I. Imposition of an equitable lien, such funds as being subject to the lien held in the Trust for the Plan;

J. Reformation of the Plan;

K. Ordering Defendants to pay future benefits in accordance with the terms of the Plan, as reformed, and as required by the benefit commencement provisions of ERISA;

L. Awarding, declaring, or otherwise providing Plaintiff and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper, and such appropriate equitable relief as the Court may order,

including an accounting, surcharge, disgorgement of profits, equitable lien, constructive trust, or other remedy;

M. Awarding to Plaintiff's counsel attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

N. Any other relief the Court determines is just and proper.

Respectfully submitted on November 11, 2026, by:

*/s/ Louise N. Smith*
**SMITH LAW, LLC**
Louise N. Smith, GA Bar No. 131876
William J. Smith, GA Bar No. 710280
3611 Braselton Hwy., Ste 202
Dacula, GA 30019
Telephone: (678) 889-2898
Facsimile: (844) 828-5615
louise@smithlaw-llc.com
william@smithlaw-llc.com

**NICHOLS KASTER, PLLP**
Brock J. Specht, MN Bar No. 0388343 *
Patricia C. Dana, MN Bar No. 0400803*
80 S. Eighth Street, Suite 4700
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
bspecht@nka.com
pdana@nka.com

* *Applications for admission pro hac vice forthcoming.*

***Counsel for Plaintiff and the proposed Class***